UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLTON JAMES ROOD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SECRETARY OF CDCR, et al.,<br><br>　　　　Defendants. | Case No. 1:22-cv-00449-SAB (PC)<br><br>SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT<br><br>(ECF No. 1) |

Plaintiff Colton James Rood is appearing pro se and in forma pauperis in this civil rights action pursuant to 28 U.S.C. § 1983.

On April 14, 2022, Plaintiff filed the instant complaint in the United States District Court for the Eastern District of California, Sacramento Division. On April 18, 2022, the action was transferred to this Court.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary

1

relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## SUMMARY OF ALLEGATIONS

The Court accepts Plaintiff's allegations in his complaint as true *only* for the purpose of the screening requirement under 28 U.S.C. § 1915.

Plaintiff names several prison officials at North Kern State Prison (NKSP) as Defendants.

There are no cameras at NKSP and the prison uses Northern Riders Independent Biter gang members to keep order and influence the general population.

On the first day at NKSP, Plaintiff observed from a holding cell a sergeant speaking to other officers. He told them "That's Rood. We tried to kill him in Pleasant Valley." Plaintiff was placed in segregation instead of quarantine. On the way to segregation in the D facility building 6, Plaintiff was placed in cuffs and escorted by three officers. To get to building 6 you must go in front of buildings 4 and 5. Outside of building 5 is a gate that closes to make an enclosed patio in front of the building.

1  This gate was open for use and an inmate was standing outside it waiting for Plaintiff.  His stance was
2  aggressive and before coming within 15 yards of him, the escorting officer radioed to the tower and
3  reported the inmate at the gate.  The tower officer said he was not aware that the gate was open and
4  yelled for the inmate to go back inside.  The officer stated, "Wow that's a setup if I've ever seen one.
5  Who did you piss off."
6      Eventually Plaintiff was moved into building 5.  On his first week an inmate porter was
7  rushing Plaintiff to eat and dump his meal tray, and at the insistence of officers, he tried to take
8  Plaintiff's tray.  When Plaintiff did not give up his food the inmate became violent so that Plaintiff
9  was forced to incapacitate him before finishing his food.  Staff saw the entire incident but did not call
10 an emergency or otherwise act.  The inmate was a gang member and his party was very angry at
11 Plaintiff.  They told Plaintiff that he had to pay money or otherwise get jumped on the yard.  Plaintiff
12 could not go to prison officials because they were abusive and assented to the violence of the gangs
13 they controlled.  Plaintiff wrote an emergency appeal on November 4, 2020.  He was forced to go to
14 the yard after a medical appointment by staff and was jumped by four gang members immediately
15 afterward.  One of the inmates was the same as was outside building 5 ready to attack Plaintiff on his
16 way to building 6 that first day.  Plaintiff was attacked by four people of the gang that he mentioned in
17 his appeal.  The officers did not attempt to stop the fight or press the alarm and simply watched.  The
18 officers only acted when people got tired and began winning the fight.  Officers allowed two of the
19 inmates that attacked Plaintiff to go without trouble or attention and falsified reports by stating only
20 two inmates had attacked Plaintiff.  The attack was an intentional coordination by staff in retaliation
21 for filing lawsuits.  Plaintiff was found guilty and denied witnesses by R. Philpott.
22     When Plaintiff was moved from building 5 to building 4, he had no clothing because officials
23 had taken them, except for boxers.  Plaintiff was provided a pair of pants.  A porter inmate had been
24 hoarding state issued razors and attacked Plaintiff while floor officer Morrell watched and did nothing.
25 Days later the inmate convinced a J-cat to attack Plaintiff.  The J-cat attacked Plaintiff while he was in
26 his cell and Morrell stood in the doorway but did not intervene.  Instead, officer Morrell called his
27 porter to drag the J-cat out of Plaintiff's cell.  No report was filed by Morrell regarding the incident,
28 and the following day the porter pushed someone into Plaintiff and pulled his shirt over his head when

3

he was carrying his breakfast tray. Plaintiff was hit a couple of times and then ran toward the corner of the building. Morrell pepper sprayed Plaintiff in the face without cause. Morell, Ortiz and Luo then falsified reports saying that he and the other inmate attacked one another. Plaintiff had multiple witnesses to the incident and had investigative employee Colbert question them. When the inmate was questioned by W. Colbert who told the inmate, "Before we start this let me tell you what you're going to say to these questions… you fought him and he fought you…If anyone else comes to talk to you about it this is what you're going to tell them, got it." The officers conspired to falsify documentation against Plaintiff, and he was found guilty of fighting and assessed penalties, including loss of good time credits.

On February 10, 2021, Plaintiff observed two inmate porters in building 4 being called into the office by officer Carrillo. Everyone else was locked down except for those two inmates. The porters came out of the office several minutes later and went straight to cell 120. The occupant of cell 120 was an enhanced outpatient and had reportedly broke Robert Hansen's jaw earlier that morning at canteen line. The porters then went directly back to officer Carrillo's office and talked to him, then returned to cell 120 and told the inmate he had to attack Plaintiff to make up for attacking Robert. Officers went to Plaintiff's cell and said they wanted him to really hurt the guy in 120.

At 2:30 p.m. the dayroom opened and the inmate from cell 120 rushed Plaintiff while in his cell as Plaintiff was bent over drinking water from the sink. Plaintiff proceeded to mitigate the threat, left the inmate inside his cell, and shut the door behind him to sit at one of the tables in the dayroom. Three staff members were present and observed the incident but did nothing. Only one of the officer's wrote a report falsely stating that the incident took place in front of Plaintiff's cell. It was later revealed that the inmate who attacked Plaintiff was a carrier of HIV. Officer Carrillo knowingly put Plaintiff's life at risk.

At each rules violation hearing, Plaintiff requested witnesses. At the first two hearings, all witnesses were denied a voice and it was stated that Plaintiff did not request it. At the third hearing, Plaintiff was allowed to call several witnesses who each testified that the incident occurred in his cell. The lieutenant became very angry and stated he would charge Plaintiff with a crime unless he plead guilty. The lieutenant then asked "did you fight" to which Plaintiff said "yes." The lieutenant then

scratched all his witness statements form his notes and wrote that Plaintiff plead guilty which resulted in the loss of good time credits.  Plaintiff was informed by Carrillo that he knew of his lawsuits against CDCR and Shasta County stating, "Are you trying to get another lawsuit?"

Officer Carrillo wrote a second false report stating Plaintiff was having suicidal thoughts. Carrillo issues a rules violation report for "delaying a peace officer."  The lieutenant found Plaintiff guilty then dismissed the violation.

## III.
## DISCUSSION

### A.      Linkage Requirement

Under Section 1983, Plaintiff must demonstrate that each Defendant personally participated in the deprivation of her rights. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). In other words, there must be an actual connection or link between the actions of the Defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 695 (1978).

Plaintiff names sixteen different Defendants in the caption of the complaint but fails to assert charging allegations as to each of the Defendants.  The Court will grant Plaintiff the opportunity to amend the complaint to cure this defect if he can do so in good faith.

### B.      Deliberate Indifference to Safety

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526–27 (1984); DeShaney v. Winnebago Cty. Dep't of Social Services, 489 U.S. 189, 199–200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.").  This duty includes the requirement that officials protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citations omitted); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).

The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1)

5

the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. Farmer, 511 U.S. at 834.

A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. Id. at 837. Allegations in a pro se complaint sufficient to raise an inference that the named prison officials knew that the plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it adequately state a failure-to-protect claim. See Hearns, 413 F.3d at 1041–42 (citing Farmer, 511 U.S. at 847).

Plaintiff alleges several different unrelated incidents in which he was attacked by another inmates while officers watched and failed to intervene. Although Plaintiff may be able to state a cognizable claim, he cannot proceed on several unrelated incidents of misconduct. Plaintiff is advised that a basic lawsuit is a single claim against a single defendant. Federal Rule of Civil Procedure 18(a) allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant. Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the action." However, unrelated claims that involve different defendants must be brought in separate lawsuits. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff may not proceed in one action on a myriad of unrelated claims against different defendants. "The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). The fact that certain claims involve the same

type of misconduct, that does not render them related.  In addition, Plaintiff does not name and clearly link each of the alleged individuals who observed and failed to intervene.  Accordingly, the Court will grant Plaintiff the opportunity to amend the complaint to cure the deficiencies.

**C.     Retaliation**

Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983 even if the act, when taken for different reasons, would have been proper. See Mt. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283–84 (1977). Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. See Perry v. Sindermann, 408 U.S. 593, 597 (1972). Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (internal citation omitted).

Although Plaintiff contends that officers set up another inmate to attack him in retaliation for filing lawsuits, he fails to name or link any of the "officers" who allegedly set up the attack.  Plaintiff must clarify which Defendant(s) he feels are responsible for any given violation(s) of his constitutional rights.  Simply referring to "officers" is insufficient to link a specific Defendant to offending actions. See, e.g., Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) ("Plaintiff must allege the basis of his claim against *each* defendant to satisfy Federal Rule of Civil Procedure 8(a)(2)[.]" (italics added)); see also Van Dyke Ford, Inc. v. Ford Motor Co., 399 F. Supp. 277, 284 (D. Wis. 1975) ("Specific identification of the parties to the activities alleged by the plaintiffs is required … to enable the defendant to plead intelligently.")  Accordingly, the Court will grant Plaintiff leave to amend the complaint to cure the deficiencies.

**D.     False Rules Violation Reports**

Plaintiff claims that some of the Defendants wrote false disciplinary reports against him.  This allegation, even if true, does not raise a constitutional claim because there is no due process right to be free from false charges.  The falsification of a disciplinary report does not state a standalone

7

constitutional claim. Canovas v. California Dept. of Corrections, 2:14-cv-2004 KJN P, 2014 WL 5699750, n.2 (E.D. Cal. 2014); see e.g., Lee v. Whitten, 2:12-cv-2104 GEB KJN P, 2012 WL 4468420, *4 (E.D. Cal. 2012). There is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free decision-making." Jones v. Woodward, 1:14-cv-2084-SAB (PC), 2015 WL 1014257, *2 (E.D. Cal. 2015) (citing Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994); McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983)). Therefore, Plaintiff fails to state a due process claim for false information being reported against him.

### D. Loss of Good Time Credits

It has long been established that state prisoners cannot challenge the fact or duration of their confinement in a section 1983 action and their sole remedy lies in habeas corpus relief. Wilkinson v. Dotson, 544 U.S. 74, 78 (2005). Often referred to as the favorable termination rule or the Heck bar, this exception to section 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement-either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." Wilkinson, 544 U.S. at 81; Heck v. Humphrey, 512 U.S. 477, 482, 486–87 (1994); Edwards v. Balisok, 520 U.S. 641, 644 (1997).

Thus, "a state prisoner's [section] 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Id. at 81–82.

Plaintiff is seeking to restore the forfeited good time credits. This particular claim may be barred by Heck, 512 U.S. 477. Compare Edwards, 520 U.S. at 646 (holding that § 1983 claim is not cognizable because allegations of procedural defects and a biased hearing officer implied the invalidity of the underlying prison disciplinary sanction of loss of good-time credits) with Ramirez v.

8

Galaza, 334 F.3d 850, 858 (9th. Cir. 2003) (holding that the favorable termination rule of Heck and Edwards does not apply to challenges to prison disciplinary hearings where the administrative sanction imposed does not affect the overall length of confinement and, thus, does not go to the heart of habeas).

Based on Plaintiff's allegations it is clear that he was assessed a loss of good time credits and he is seeking restoration of those lost credits. A judgment in favor of Plaintiff on this claim would then necessarily imply the invalidity of the disciplinary action, and Plaintiff has not demonstrated that the disciplinary action has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." See, e.g., Cox v. Clark, 321 Fed. Appx. 673, 676 (9th Cir. 2009) (affirming dismissal of due process claim pursuant to Balisok to the extent that plaintiff sought restoration of good-time credits and the reversal of a disciplinary decision); McCoy v. Spidle, No. 1:07-cv-198-DCB, 2009 WL 1287872, *7–*8 (E.D. Cal. May 6, 2009) ("A challenge under section 1983, seeking only damages and declaratory relief for procedural due process violations is also barred if the nature of the challenge would necessarily imply the invalidity of the deprivation of good-time credits."). Accordingly, Plaintiff fails to state a cognizable claim for relief.

## IV.
## CONCLUSION AND ORDER

For the reasons discussed, Plaintiff fails to state a cognizable claim for relief and shall be granted leave to file an amended complaint to cure the deficiencies identified in this order, if he believes he can do so in good faith. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted). Further, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George, 507 F.3d at 607 (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey

v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within thirty (30) days from the date of service of this order, Plaintiff shall file an amended complaint;
3. Plaintiff's amended complaint shall not exceed twenty-five (25) pages in length; and
4. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend to a district judge that this action be dismissed consistent with the reasons stated in this order.

IT IS SO ORDERED.

Dated:   **June 14, 2022**

UNITED STATES MAGISTRATE JUDGE